UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRODHEIM,<br><br>      Plaintiff,<br><br>    v.<br><br>JENNIFER SHAFFER, et al.,<br><br>      Defendants. | No. 2:05-cv-1512 LKK GGH P<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

    Plaintiff is a state prisoner proceeding with counsel in this civil rights action. At the April 24, 2014 hearing on defendants' motion for judgment on the pleadings and plaintiff's motion to file a seventh amended and supplemental complaint, this court directed the parties to file briefing to address the effect of Gonzales v. California, 739 F.3d 1226 (9th Cir. 2014), on this case. That briefing has now been filed and after reviewing it, the undersigned issues the following order and findings and recommendations.

BACKGROUND

    Plaintiff is serving a sentence of 25 years to life with the possibility of parole and is alleging that California's parole system violates his constitutional rights. At the April 24, 2014 hearing, the court granted plaintiff's motion to amend because defendants had filed a non-

/////

/////

opposition. The seventh amended complaint ("SAC") is now before the court. It alleges one cause of action for violation of the *ex post facto* clause: that since the passage of Proposition 89[1] in 1988, adding Section 8(b) to Article V of the California Constitution, it has never been used by a governor to reverse a Board of Parole Hearings ("Board") decision "finding an inmate unsuitable for parole, but has been used exclusively by all governors to reverse decisions by the Board finding inmates suitable for parole." (ECF No. 97-1, ¶ 73.) The SAC alleges that plaintiff has been found suitable for parole twice, and both times the governor has reversed the Board's decisions, which has increased his punishment, which would have been less prior to passage of Proposition 89, and in fact "he would have been released immediately upon the setting of his term." Id. at ¶ 74.

Petitioner filed two state habeas actions which resulted in adverse, reasoned decisions by the state courts. The first decision, issued November 16, 2012, resolved four contentions in regard to the governor's reversal of the Board's decision to grant parole, including one pertinent here, that "the Governor's reversal violated the *ex post facto* clause of federal and state constitutions."[2] ECF No. 106-1, Ex. A at 1. The second decision, filed January 22, 2014, addressed petitioner's contention that the Governor's reversal of the parole grant violated his due process rights because there is no evidence to support the Governor's decision that he currently poses an unreasonable risk to public safety."[3] Id., Ex. B at 2. Those decisions will be discussed fully in the next section.

At the April 24th hearing, the court directed the parties to brief the applicability of Gonzales v. California Dep't of Corr., 739 F.3d 1226 (9th Cir. 2014), and whether claim

---

[1] Proposition 89 was enacted in 1988 as article V, section 8(b) of California's Constitution, and granted authority to the governor to reverse parole board decisions.
[2] This order is considered final under California law, having been presented to the state supreme court. Def.'s Reply to Opp'n to Mot. for J. on the Pleadings, Exs. C, D. (ECF No. 96 at 11-14.)
[3] According to defendants at hearing, this ruling is currently pending review in a higher court. However, this pending appeal does not affect the disposition here because having failed to raise the claim in the Superior Court, the higher state courts will not generally review it. In re Steele, 32 Cal. 4th 682, 692 (2004). In any event, the first state action which was presented to all courts is the only one necessary for the Gonzales discussion, i.e., if no second action had been filed, the first decision would have sufficed for the Gonzales review.

preclusion would bar this action based on a reasoned denial of plaintiff's previous state habeas action.

DISCUSSION

I. Claim Preclusion

Because Gonzales applied California's standards of *res judicata* (a state court, not a federal court had decided the underlying case), this court will also apply California law rather than federal law to issues of claim preclusion. See also Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2008) (reversing district court's use of federal claim preclusion standards and applying instead California's rules on *res judicata* to determine civil rights claim was precluded by prior state habeas petition).

Claim preclusion acts to prevent "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001).

"California courts employ the 'primary rights' theory to determine what constitutes the same cause of action for claim preclusion purposes." Gonzales, 739 F.3d at 1232 (quoting Brodheim, 584 F.3d at 1268.) A "'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." Gonzales, 739 F.3d at 1232–1233 (quoting Crowley v. Katleman, 8 Cal.4th 666, 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083 (1994)). Claims are considered identical under California law if they concern the same "primary right." City of Martinez v. Texaco Trading & Transp., Inc., 353 F.3d 758, 762 (9th Cir. 2003), citing Acuna v. Regents of Univ. of Cal., 56 Cal.App.4th 639, 65 Cal.Rptr.2d 388, 394 (1997). In the Ninth Circuit's recent decision applying claim preclusion in the section 1983 context where a previously decided state habeas action was based on the same cause of action, the court described application of the primary rights theory:

> "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." Eichman v. Fotomat Corp., 147 Cal.App.3d

3

> 1170, 197 Cal.Rptr. 612, 614 (1983). "If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised." Id. (emphasis added). "[U]nder the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 108 Cal.Rptr.3d 806, 230 P.3d 342, 348 (2010).

Gonzales, 739 F.3d at 1232-1233.

Gonzales had previously filed a state habeas petition challenging his placement in a secured housing unit based on his gang membership, and that petition had been denied. He then filed a civil rights action alleging retaliation and challenging the same actions by the same prison officials, pursuant to the First and Eighth Amendments, and the Equal Protection Clause. The Ninth Circuit held that because the habeas petition and the § 1983 action sought to vindicate the same primary right, petitioner's protected liberty interest in being free from SHU placement, and concerned the same primary duty by the prison to refrain from depriving Gonzales of his liberty without due process, California's claim preclusion barred the federal action.[4] Id. at 1233-34. The court definitively stated, "Gonzales challenged the fact of his confinement in the SHU in his state habeas petition. That he seeks a different remedy or asserts a different legal theory in his current challenge is irrelevant under California's claim preclusion doctrine." Id. at 1234.

Here, plaintiff makes four arguments as to why this case is not precluded by the superior court habeas decision addressing the 2012 reversal decision by the Governor: "(1) the claim in the SAC is not based on the same cause of action as that in the state habeas case; (2) the issues raised by the SAC were not the issues decided in the state habeas proceeding; (3) Brodheim did not receive a full and fair hearing in the state habeas proceeding; and (4) there have been intervening material changes in law and fact, rendering the application of preclusion doctrine unjust."[5] (ECF No. 105 at 6.)

---

[4] It was undisputed that "the harm suffered was Gonzales's gang validation and indeterminate SHU detention based on allegedly insufficient or unreliable evidence." Id. at 1233.

[5] Plaintiff requests that the court take judicial notice of court records in Thomas v. Yates, No. 1:05-cv-1198 LJO JMD, Order Scheduling Evidentiary Hearing, filed March 17, 2009, and Gilman v. Brown, No. 2:05-cv-0830 LKK CKD. (ECF No. 105 at 10, n. 1; Ex. A.) Plaintiff cites these court records to bolster his argument that "without the second parole suitability reversal in

4

       Plaintiff first claims that the 2012 state habeas decision concerned a different injury, the right to be free from the Governor's violation of the *ex post facto* Clause in 2012, and the primary right alleged in this case is the right to be free from the same unconstitutional conduct in the future.[6] In response, defendants contend that the primary rights are the same in both cases, the right to be released from confinement. Defendants additionally assert that even if plaintiff is seeking a different remedy in this case, claim preclusion bars him because this claim could have been brought with the other one. Defendants further argue that even if plaintiff is claiming a right to be free from the governor's review in the future, it is not ripe for review.

       The primary right claimed here is the right to be released on parole. Plaintiff's characterization of it as a right to be paroled in the future so that it is different from the relief sought in state court, the right to be paroled in 2012, and then in 2013, does not change its nature.[7] Gonzales specifically ruled that as long as the same primary right is at stake in both actions, it did not matter whether plaintiff pled different theories of recovery or sought different forms of relief or added new facts supporting recovery. Gonzales, 739 F.3d at 1233.[8]

---

2013, it might have been questionable whether Brodheim would even have standing to prosecute an *ex post facto* claim." Id.

       All requests for judicial notice are granted pursuant to Fed. R. Evid. 201. The court takes notice of its own records in other actions in this district. United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (a court may take judicial notice of its own records).

[6] The parties do not dispute that both state habeas petitions were final judgments, decided on the merits.

[7] The *ex post* facto argument is not related to some future action the governor might or might not take. Either the law at issue has been *ex post facto* in its application, or it has not. The same claim and same facts would be at issue in this case no matter whether a decision in 2012, 2013 or sometime in the future was involved, i.e., plaintiff's entire factual case hinges on the *past* actions of governors. Moreover, in a strained attempt to avoid Gonzales, plaintiff may well have placed the jurisdiction of this court in jeopardy due to lack of standing because any injury from a future governor's action is very speculative. Indeed, whether the BPH again finds plaintiff suitable is speculative in itself.

[8] Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009) does not direct a different result. The harms in Brodheim were distinct – lack of meaningful review, a procedural harm, in the state court action, and acts of retaliation for filing a grievance, a substantive violation, in the federal action. Furthermore, the violations in each action "were caused at different times, by different acts, and by different actors." Id. at 1268-69. None of those differences are present in this case. Even the Gonzales court noted the differences between Brodheim and its own case, advising plaintiff that he had read the "distinction between procedural and substantive harms out of context." The court stated, "Brodheim does not stand for the proposition that an allegation of a

Furthermore, plaintiff did again seek relief in the state court in 2013, and the fact that he raised a different legal theory that did not include an *ex post facto* claim does not counsel against claim preclusion under Gonzales because the primary right was the same. Id. "A claim is the 'same claim' if it is derived from the same 'primary right,' which is 'the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based.'" MHC Financing Ltd. Partnership v. City of San Rafael, 714 F.3d 1118, 1125-26 (9th Cir. 2013), quoting Adam Bros. Farming, Inc. v. Cnty. Of Santa Barbara, 604 F.3d 1142, 1148 (9th Cir. 2010) (citation omitted). Plaintiff here seeks to be free from the injury of having his parole grant reversed by the governor. Furthermore, both of plaintiff's current and prior state actions involve "the same actions by the same group of officials at the same time that resulted in the same harm." Gonzales, 739 F.3d at 1234. Furthermore, the SAC challenges the governor's actions both in regard to his 2012, 2013 BPH parole eligibility findings; SAC ¶¶ 58, 61; and therefore any *ex post* facto claims, either past or future looking (assuming there is any difference), raised in this federal action were, or *could have been*, raised in the 2012 action, or could have been raised in the 2013 state habeas petition, and are thus barred.[9]

Plaintiff also contends that his inability to obtain discovery or an evidentiary hearing on his *ex post facto* claim in the state courts deprived him of a full and fair hearing, and therefore claim or issue preclusion does not apply. Plaintiff cites state law and Gonzales in particular for the general proposition that discovery is only available if an order to show cause has been issued. Although an order to show cause may have been a component of the procedural background in

---

'procedural' harm always involves a different cause of action from an allegation of 'substantive' harm." 739 F.3d at 1234.

[9] Plaintiff separately argues that issue preclusion or collateral estoppel does not bar this action; however, the parties were asked to brief Gonzales which was limited to analysis of claim preclusion, and that is the concept applicable to bar the claim in this action. Plaintiff's attempt to now argue that issue preclusion does not bar this action is an unnecessary smoke screen designed to distract from the real issue here, the plaintiff is barred from relitigating the very same claim that was, or could have been, brought in the earlier state habeas petitions. As plaintiff himself quoted from California Physicians' Service v. Aoki Diabetes Research Institute, 163 Cal.App.4th 1506, 1519 (2008) (citation omitted), "[c]ollateral estoppel is one aspect of the broader doctrine of res judicata…" (ECF No. 105 at 11:22.) Plaintiff is foreclosed from arguing this principle by the result of the previous claim preclusion analysis.

Gonzales, it was not an underpinning of the holding, which was focused on whether the denial was reasoned. 739 F.3d at 1231.

The records of the state court case attest to the full and fair hearing that petitioner received in that forum. The order resolving petitioner's first state habeas petition consisted of thirteen pages of reasoning, based on the petition, the informal response by respondent, and petitioner's reply, as ordered by the court. (Def.'s Ex. A, ECF No. 106-1 at 2-14.) The decision addressed each of petitioner's claims, which were set forth as follows:

> Petitioner contends the Governor's reversal lacked any supporting evidence and was otherwise arbitrary, violating Petitioner's due process rights. Petitioner contends the Governor's practice of parole review disregards the statutory scheme for parole. Petitioner also contends the Governor's reversal violated the ex post facto clause of federal and state constitutions. Finally, petitioner contends the Governor's reversal imposed disproportionate punishment in a manner that violated the federal and state prohibitions of cruel and unusual punishment.

(Id. at 1.) As pointed out by respondent, although there had been no discovery or evidentiary hearing as in Gonzales, the petition was drafted by petitioner's counsel and consisted of 74 pages plus 392 pages of exhibits. (Def.'s Ex. A.)

In addressing the *ex post facto* claim, the court first noted that pursuant to In re Rosenkrantz, 29 Cal. 4th 616, 638-42, 128 Cal.Rptr.2d 104 (2002), which petitioner acknowledged, the California Supreme Court has held that Article V, Section 8(b) of California's constitution does not violate the *ex post facto* clause. (ECF No. 106 at 12.) The superior court then analyzed petitioner's claim that *as applied*, the law resulted in a greater punishment to petitioner than he would have received under the old law. The court noted that Rosenkrantz applied to this issue because it addressed both facial challenges and "as applied" challenges. The court further stated that the test is whether there was a sufficient risk of increasing the measure of punishment under the law at issue, and found that "[t]he mere possibility that the Governor may revoke a parole grant creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the *ex post facto* clause…." (Id. at 13.) Based on this analysis, there was no discovery or evidentiary hearing that

7

1 could have elucidated the matters at issue more than they were. The discovery pointed out by
2 plaintiff which was set forth in the court's order in Gilman, (ECF No. 105 at 16-17), was
3 information readily available to plaintiff's counsel in the state habeas proceedings, and obtainable
4 without discovery.[10]

Plaintiff's final argument is that "intervening material changes in fact and law have
6 occurred," such that application of preclusion is inappropriate for public policy reasons. Plaintiff
7 cites Gilman and asserts that the facts developed in that litigation concerning application of
8 Proposition 89 were not available to the state habeas court. Those facts are that two decades of
9 application of Proposition 89 indicate "a clear increase in the length of custody for life prisoners
10 and thus violates their *ex post facto* rights." As to any intervening changes in the law, plaintiff
11 states only that the state superior court "misunderstood the law."

As stated above, the factual information introduced in the Gilman case was equally
13 available to plaintiff in his state habeas case, at the very least, upon request. Plaintiff has pointed
14 to no intervening material *change* in the facts or law since the superior court's decision in
15 November, 2012.

II. Defendants' Motion for Judgment on the Pleadings

Defendants' motion for judgment on the pleadings was filed prior to the filing of
18 plaintiff's SAC, and has been mooted by the elimination of most of the causes of action that were
19 in the sixth amended complaint. The motion as it pertains to the sole remaining *ex post facto*
20 claim has been mooted by these findings and recommendations. Therefore, the motion will be
21 denied.

/////

---

[10] Plaintiff states in a footnote that a protective order in Gilman precluded *Brodheim* from viewing the discovery developed in that case. However, plaintiff's counsel in the state action could easily have sought release of the Gilman information for use in other litigation, even assuming that information was not in the public domain already. The terms of the protective order in Gilman permitted release to others on agreement of the parties or by modification to the protective order itself. See Gilman, 05-830-LKK CKD, ECF 301. The undersigned is unaware of any request by Brodheim or his counsel in federal court to use Gilman developed information in state court, or any denial of a request dealing with other litigation use of the facts acquired in Gilman discovery.

CONCLUSION

Accordingly, IT IS ORDERED that: Plaintiff's motion to file a seventh amended and supplemental complaint, filed March 27, 2014, (ECF No. 97), is granted; the seventh amended complaint is deemed filed and served effective April 24, 2014.

For the reasons stated in this opinion, IT IS HEREBY RECOMMENDED that:

1. This action be dismissed with prejudice; and

2. Defendants' motion for judgment on the pleadings, filed February 19, 2014 (ECF No. 88), be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 22, 2014

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:076/Brod1512.Gonz